UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| MELVIN C. BAKER, JR., ) | Civil Action No.: 4:15-cv-3599-RMG-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security; ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied.

## I. RELEVANT BACKGROUND

### A.     Procedural History

Plaintiff filed an application for DIB on November 10, 2010, alleging inability to work since July 15, 2010. (Tr. 71). His claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. (Tr. 47). A hearing was held on September 19, 2012, at which time the Plaintiff and a vocational expert (VE) testified. (Tr. 256-89). The Administrative Law Judge (ALJ) issued an unfavorable decision on October 31, 2012, finding that Plaintiff was not disabled within the meaning of the Act. (Tr.15-26). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final

decision. (Tr. 4-14). Plaintiff filed an action in this court on August 26, 2013.

Meanwhile, Plaintiff filed a second application for benefits on August 7, 2013, again alleging disability as of July 15, 2010. (Tr. 382-385). The Commissioner issued a Notice of Award on December 13, 2013, awarding benefits. (Tr. 354-359). The Notice stated that Plaintiff became disabled as of August 1, 2011, had filed for benefits in August 2013, and thus was eligible for benefits as of August 2012.

On June 20, 2014, this Court granted the Commissioner's motion to remand Plaintiff's claim for further proceedings with respect to his first application for benefits. (Tr. 312-313). The Appeals Council reviewed the claim itself and affirmed the subsequent award of benefits[1], but also remanded the determination to the ALJ, noting that the state agency did not have jurisdiction to adjudicate the period already considered in the ALJ's decision issued on November 2, 2012. (Tr. 320-327). The ALJ held a second hearing on June 12, 2015. (Tr. 510-519). On July 2, 2015, the ALJ issued a decision denying Plaintiff's claim for the period prior to November 1, 2011. (Tr. 293-302). This appeal followed.

The period at issue here is from July 2010, Plaintiff's alleged onset, to November 1, 2011, the onset acknowledged by the Commissioner.

### B. Plaintiff's Background and Medical History

#### 1. Introductory Facts

Plaintiff was born on October 3, 1957, and was 53 years old at the time of the alleged onset. (Tr. 300). Plaintiff completed his education through tenth grade and has past relevant work

---

[1] The Appeals Council corrected the award of benefits insofar as the award overlapped with the ALJ's first decision on November 2, 2012.

experience as a repair technician, truck/auto mechanic, and shop supervisor/general manager. (Tr. 261, 300). Plaintiff alleges disability due to Multiple Sclerosis (MS) and mental/emotional issues.

### 2. Medical Records and Opinions

Plaintiff saw his primary doctor, Dr. Evans of East Cooper Family Practice, on February 11, 2010. He had a history of diverticulitis two or three years prior and presented on that date with left lower quadrant pain. He was visibly uncomfortable, holding the lower left quadrant. There was tenderness to palpation over that area, but no rebound. Dr. Evans' assessment was diverticulitis and he prescribed Cipro. As Ms. Baker was 50 years old, Dr. Evans reminded him that a screening colonoscopy was in order. (Tr. 153).

Plaintiff returned to Dr. Evans on March 2, 2010 stating "I just don't feel right." He described a two or three day history of severe fatigue and mild muscle aches as well as some dizziness and two episodes of blurred or double vision. Dr. Evans' initial assessment was generalized fatigue and malaise and hyperthyroidism. Due to the sudden onset of Plaintiff's symptoms, he ordered lab work. Plaintiff was overdue for thyroid function readings, so this was initially thought to be contributing to his symptoms. (Tr. 154).

An MRI of Plaintiff's brain on March 12, 2010 revealed multiple lesions within the periventricular and central white matter. There was also a faintly enhancing lesion involving the left superior cerebellar peduncle. These findings were consistent with multiple sclerosis. (Tr. 158).

On March 15, 2010, Plaintiff returned to Dr. Evans' office with his wife. Dr. Evans noted the MRI findings which had suggested MS. Some of his symptoms had resolved, his fatigue and motor weakness persisted but had improved. Ms. Baker's wife reported that he had been depressed and "snappy" since his symptoms began. Dr. Evans referred Plaintiff to a neurologist to discuss

proper treatment and further testing. Dr. Evans was "highly concerned" about Plaintiff's change in mood, noting that he had a history of depression and anxiety previously treated with Zoloft. In light of this, he provided a four week sample supply of Lexapro. Plaintiff was to contact him by phone to discuss his results after this month-long trial. (Tr. 157).

Dr. Walker saw Plaintiff on September 14, 2010. Plaintiff told Dr. Walker that he had no new symptoms, but did experience continued fatigue and tiredness as well as his impaired gait. "Everything else seems to be improving day-by-day." Plaintiff also reported a number of falls. Copaxone injections caused a site reaction and abdominal discomfort. He admitted that he sometimes missed shots, and actually felt better overall. He reported poor concentration and decreased dexterity. On exam, Plaintiff was in mild distress. Tandem walking was poor - neurologic exam was otherwise negative. Dr. Walker also noted a history of debilitating migraines, and elected to "treat as symptoms suggest and dictate." Plaintiff was changed from Copaxone to Betaseron, which would be dosed every other day, as he was having problems administering the Copaxone daily. He was prescribed Nuvigil for his fatigue. (Tr. 166-68).

On December 28, 2010, Dr. Walker's notes were identical to the September visit. He had stopped Betaseron after six weeks due to increased fatigue and myalgia. Plaintiff was to restart Copaxone and continue Provigil. (TR 162-64).

Dr. Mark Williams, a psychologist, interviewed Plaintiff on February 7, 2011, at the request of the State Agency examiner. Plaintiff identified chronic fatigue as his main functional-related limitation but also reported problems with balance, weakness and numbness as well as episodes of double vision. He also noted some perceived cognitive decline and some fine motor skill reduction. He felt he was easily agitated and was still trying to adjust to the life changes which had occurred

since developing MS. (Tr. 169-72).

Dr. Williams' examination consisted of an interview and brief symptom validity test. He did not administer a mental status exam, nor any sort of objective testing. He described his observation as "casual and brief." Based on Plaintiff's complains, Dr. Williams guessed that he may suffer from adjustment disorder, mixed with depressed and anxious mood and probable mild cognitive disorder. Despite the informality of his "examination" Dr. Williams was comfortable opining that Plaintiff's adjustment disorder was "not likely significantly limiting" and that the symptoms related to his MS "would be expected not to be more than mildly limited." He felt that Plaintiff had the capacity for simple work, provided that the work did not override his capacities from a physical perspective." (Tr. 169-72).

On April 26, 2011, Plaintiff saw Dr. Walker and reported that he felt poorly. He endorsed decreased energy, anhedonia, and generalized fatigue. He was taking his medications as prescribed. He also reported decreased concentration and intermittent numbness. Dr. Walker was concerned that there may be a new lesion, so he ordered another MRI and started Plaintiff on Celexa. (Tr. 195-96). An updated MRI showed no new lesions. (Tr. 198). A cervical spine x-ray showed a demyelinating lesion on the spinal cord at C2 and degenerative changes in the cervical spine with no stenosis or neuroforaminal narrowing. (Tr. 197).

Dr. Kerri Kolehma, a physical medicine and rehabilitation specialist and anesthesiologist, examined Plaintiff on April 27, 2011 at the request of the State Agency examiner. She noted that Plaintiff's "available records indicate he has multiple sclerosis." She performed a brief physical and noted that he had trouble with finger-to nose testing, no coordination in the left hand, had trouble with heel-to-shin testing on the left, a positive Romberg test (loss of balance while standing still with

eyes closed) and could not heel-toe walk without losing balance. (Tr. 200-01).

Dr. Kolehma concluded that Plaintiff had difficulty with fine movements in both upper extremities and would have difficulty performing tasks which required exact placement of objects, could not work at heights in tight areas, but was independent in his daily activities and could communicate without restriction. She felt he could place a box on a shelf. (Tr. 200-01).

On November 29, 2011, Plaintiff saw Dr. Walker again. He felt his MS was progressing. He reported a constant struggle getting up, using his hands, and had ongoing balance issues. He had numbness in his hands and face. He reported that he was taking his medications. He could only participate in activities of daily living a few days per week. Dr. Walker's neurologic examination was unchanged from the prior visits. His note from this visit is added to the end of the history of present illness which appears in the notes from every visit to this clinic. Copaxone and Provigil were continued. (Tr. 230-31).

On May 22, 2012, Plaintiff returned to Dr. Walker. Dr. Walker's notes were the same as on prior visits. He added an entry under "history of present illness" which stated that Plaintiff had increased complaints of fatigue and poor balance. He was using a cane. The injections hurt a great deal and he did not feel they were helping, and he asked Dr. Walker to change his medication. Dr. Baker added an entry under "neurologic testing" indicating that a 25 foot walk test took 25 seconds. He was started on Gilenya and Ampyra for the lower extremity weakness. Dr. Walker also signed off on a disabled placard for Plaintiff's car. (Tr. 243-45).

C.     **The Administrative Proceedings**

    1.     **The Administrative Hearing**

        a.     **September 19, 2012, Hearing**

At the time of the first hearing, Plaintiff was 52 years old with a tenth grade education. (Tr. 261). He lived in a two-story home with his wife. She had driven him to the hearing. Plaintiff's wife paid the couple's bills by working outside of the home. Prior to his onset of disability, Plaintiff had worked repairing engines, air conditioners, refrigeration units. (Tr. 263). He testified that he had worked as a manager and supervisor for 17 years. (Tr. 264). He oversaw up to 16 workers, reviewed their performance and estimated the cost of jobs he also worked alongside them and was "a hands-on type."

Plaintiff used a cane occasionally which had not been prescribed by a doctor. (Tr. 262). He later explained that his legs felt weak and he had fallen, so he purchased it on his own for stability. (Tr. 274). He tried not to use it, but every few months felt the need.

Overall, Plaintiff identified fatigue as the most troublesome symptom of his MS. He said at first he had good and bad days, and as time had progressed, he had bad and worse days. (Tr. 265). His feet were numb, he was weak, noticed reduced "brain function," and suffered joint and muscle pain on a daily basis. (Tr. 266). He didn't take anything other than Aleve. He didn't know of any way to improve his pain, he simply assumed it was due to his MS. He did take vitamin D to help with his energy. (Tr. 267).

Plaintiff stated that his symptoms were progressive and had gotten worse "as far as everything." He awoke at six in the morning but by 11 o'clock, he was "just washed out." He spent his day trying to do things around the house before that time. He spent the afternoon watching

television and went to bed between 9 and 10 o'clock. He could fix himself a sandwich for lunch, but his wife cooked at night. He usually did not sleep through the night. (Tr. 268). He occasionally went shopping with his wife, and attended church on Sunday mornings. (Tr. 270). Plaintiff generally stated that his activity level fluctuated depending on how he was feeling.

Plaintiff acknowledged that an exam had resulted in a diagnosis of adjustment disorder. (Tr. 271). He was frustrated with his disease and limitations. He agreed that he had trouble learning and retaining new information. (Tr. 272). He had also lost some information which he used to know. He estimated that he could concentrate for about 2 hours and no more. "Once I'm gone, I'm just gone." (Tr. 273). He felt that as of his onset date, he was limited to about half a day of functioning. By the time of the hearing it had declined even further. (Tr. 274).

In addition to fatigue, Plaintiff described problems using his hands. (Tr. 275). He was "very clumsy." This had begun even before he left work, resulting in a few very minor injuries.

Plaintiff was followed by a neurologist who he visited twice a year. (Tr. 277). He was not prescribed any medication for his pain, but he had never asked as he didn't want to take anything as a rule. (Tr. 278).

### b.     June 12, 2015, Hearing

Plaintiff's testimony at this second hearing was largely the same as at the prior hearing. He clarified that he had sought treatment in March 2010 for facial numbness, "and that's when they did an MRI and determined I had MS." (Tr. 514-15). Again, Plaintiff identified fatigue as the most problematic symptom. (Tr. 515). He had lost sensitivity in his feet and hands.

Plaintiff estimated that, during the relevant period, he was able to exert himself 15-20 minutes at a time. He spent his days during that period indoors, sometimes trying to do chores,

sometimes watching television, although he was not able to follow a 30 minute program. (Tr. 516). He was not able to focus on an hour-long church service.

**2.     The ALJ's Decision**

In the decision of July 2, 2015, the ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2014.

2. The claimant did not engage in substantial gainful activity during the period from July 25, 2010, through October 31, 2011 (20 CFR 404.1571 et seq.).

3. During the relevant period, the claimant had the following severe impairments: Multiple Sclerosis, an organic mental disorder, an affective disorder, and an anxiety-related disorder (20 CFR 404.1520(c)).

4. During the relevant period, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, during the relevant period, the claimant had the residual functional capacity to: sit, stand, and walk each for 6 hours of an 8 hour day; frequently lift/carry 10 pounds, occasionally lift 20 pounds; never climb, crawl or balance; occasionally crouch and stoop; and never be exposed to hazards.

6. During the relevant time period, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on October 3, 1957, and was 53 years old, which is defined as an individual closely approaching advanced age, on the alleged onset date (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a

>    finding that the claimant is "not disabled" whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from July 15, 2010, through October 31, 2011 (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 293-302).

## II. DISCUSSION

The Plaintiff argues that the ALJ erred in his decision, and that reversal and remand are appropriate in this case. Specifically, Plaintiff raises the following issues in his brief, quoted verbatim:

I. The ALJ failed to consider Mr. Baker's multiple impairments in combination; and

II. The ALJ's RFC findings do not rest on substantial evidence.

(Plaintiff's brief p. 1).

The Commissioner argues that the ALJ's decision is supported by substantial evidence.

**A.    LEGAL FRAMEWORK**

### 1.    The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. See, e.g., Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents him from doing SGA. See 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled

---

[2]The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990); see Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3]In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d) (5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir.2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. Hall v. Harris, 658 F.2d 260, 264–65 (4th Cir.1981); see generally Bowen v. Yuckert, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. See id.; Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Walls, 296 F.3d at 290 (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990)).

The court's function is not to "try these cases <u>de novo</u> or resolve mere conflicts in the evidence." <u>Vitek v. Finch</u>, 438 F.2d 1157, 1157–58 (4th Cir.1971); <u>see Pyles v. Bowen</u>, 849 F.2d 846, 848 (4th Cir.1988) (<u>citing Smith v. Schweiker</u>, 795 F.2d 343, 345 (4th Cir.1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson</u>, 402 U.S. at 390, 401; <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir.2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. <u>See Vitek</u>, 438 F.2d at 1157–58; <u>see</u> also <u>Thomas v. Celebrezze</u>, 331 F.2d 541, 543 (4th Cir.1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." <u>Blalock v. Richardson</u>, 483 F.2d 773, 775 (4th Cir.1972).

**B.     ANALYSIS**

    **1.     Combination of Impairments**

Plaintiff argues that the ALJ failed to make "particularized findings" on the combined impact of his impairments. <u>See Hines v. Bowen</u>, 872 F.2d 56, 59 (4th Cir. 1989). Plaintiff argues that the ALJ failed to explain his consideration of his impairments together as he was required to do pursuant to 20 C.F.R. § 404.1523 ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.").

For a reviewing court to determine whether the Commissioner based a decision on substantial

evidence, "the decision must include the reasons for the determination...." Green v. Chater, No. 94-2049, 1995 WL 478032, *7 (4th Cir.1995) (citing Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir.1986)). When dealing with a claimant with more than one impairment, the Commissioner "must consider the combined effect of a claimant's impairments and not fragmentize them." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.1989) (citations omitted). This requires the ALJ to "adequately explain his or her evaluation of the combined effects of the impairments." Id. (citing Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir.1985)). Whether or not the impairments are found to be severe, the ALJ must consider the severe and nonsevere complaints and impairments in combination in determining the Plaintiff's disability. Furthermore, "[a]s a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." Walker, 889 F.2d at 50. The ALJ's duty to consider the combined effect of Plaintiff's multiple impairments is not limited to one particular aspect of its review, but is to continue "throughout the disability process." 20 C.F.R. § 404.1523.

At step two of the sequential analysis, the ALJ in this case found that Plaintiff had the severe impairment of MS but that his organic mental disorder, affective disorder, and anxiety-related disorder were non-severe during the period from July 25, 2010, through October 31, 2011. The ALJ noted that Plaintiff did not seek psychiatric treatment or counseling during that period nor was he hospitalized or treated by a mental health facility. He noted that the claimant acknowledged that his activities were not significantly limited by anxiety. The ALJ found that, during the relevant period, these conditions did not result in more than mild restrictions of his activities of daily living, mild limitations of his social functioning, or mild deficiencies of his concentration, persistence or pace. (Tr. 296).

At step three, the ALJ discussed Plaintiff's MS and found that it did not meet the applicable Listings of Impairments during the relevant period. He next stated

> Further, I have considered the combined effects of the claimant's impairments and have determined the findings related to this are not at least equal in severity to those described in any Listing. In this regard, I have specifically considered the cumulative effects of the impairments on the claimant's ability to work. See Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989).

(Tr. 296). Plaintiff argues that the ALJ "failed to explain his consideration of [Plaintiff's] impairments together, both severe and non-severe." (Pl. Brief 11). He also argues that the ALJ's discussion of the impairments he found to be non-severe at step two was inadequate because he included no citation to the record. However, the ALJ noted that Plaintiff did not receive any mental health treatment during the relevant time period and, thus, there would be no records to cite to that end. The ALJ did cite to Plaintiff's statement during a mental status examination on February 7, 2011, that his anxiety did not significantly limit his daily activities. (Tr. 169-70). The psychologist's conclusion from the mental examination was that Plaintiff had no more than mild limitations with respect to any emotional symptoms or cognitive inefficiencies. (Tr. 172). Plaintiff does not point to any medical records during the relevant period discussing any mental or emotional impairments. Therefore, given the few medical records the ALJ had to evaluate, his combination of impairments discussion was sufficient. Plaintiff has offered no explanation of how more discussion of his combined impairments may have changed the outcome of this case or identified any additional restrictions that would flow from his combined impairments. For these reasons, the court finds the ALJ's listing analysis sufficiently addressed Plaintiff's combined impairments and is supported by substantial evidence. See Brown v. Astrue, C/A No. 0:10–1584–RBH, 2012 WL 3716792, at *6 (D.S.C. Aug.28, 2012) (noting that Fourth Circuit precedent issued after Walker suggested that

Walker was not meant to be used as a trap for the Commissioner).

  **2.**  **RFC Assessment**

Plaintiff next argues that the ALJ failed to properly consider his chief complaint of fatigue when he established the RFC. This court previously remanded this matter, upon motion by the Commissioner, to

> (1) conduct a supplemental hearing; (2) develop further the evidence regarding fatigue from an appropriate medical expert, if warranted; (3) clarify the nature and severity of Plaintiff's fatigue related impairments; (4) determine whether Plaintiff's fatigue related impairments meet or equal a Listed Impairment or its equivalent; (5) evaluate further Plaintiff's subjective complaints of pain and the RFC; and (6) obtain supplemental vocational expert testimony, as warranted.

(Tr. 312). In its order remanding the matter to the ALJ, the appeals council noted that

> The Administrative Law Judge gave "some weight" to the claimant's statements that fatigue affects his stamina, but found that his multiple sclerosis was described as remittent and relapsing (Tr. 24). However, the Administrative Law Judge did not address the fact that the claimant was assessed with severe fatigue by his neurologist and was treated with medication for this issue (Exhibit 5F, page 2; Tr. 196). Treatment notes show complaints of fatigue, tiredness, and diminished energy, symptoms that are noted to be "severe" by his nuerologist.

(Tr. 324). The Appeals Council directed the ALJ to

- Obtain evidence from an appropriate medical expert to clarify the nature, severity and limiting effects of the claimant's medically determinable impairments, if warranted.
- Determine whether the claimant's fatigue-related impairments meet or equal the clinical criteria of a listed impairment.
- Further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms.
- Reevaluate the claimant's maximum residual functional capacity.
- If warranted, obtain supplemental vocational expert evidence.

(Tr. 325). The ALJ acknowledged these instructions in his opinion. (Tr. 293). Plaintiff argues that, despite these instructions, the ALJ's assessment of his RFC did not properly take into consideration

his symptoms of fatigue.

A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). An ALJ must determine a claimant's capacity "for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b). SSR 96-8p specifies that, the "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." "In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)." Id.

The ALJ found the following RFC for Plaintiff:

> [D]uring the relevant period, the claimant had the residual functional capacity to: sit, stand, and walk each for 6 hours of an 8 hour day; frequently lift/carry 10 pounds, occasionally lift 20 pounds; never climb, crawl or balance; occasionally crouch and stoop; and never be exposed to hazards.

(Tr. 296-97). With respect to Plaintiff's fatigue, the ALJ noted that Plaintiff testified at the hearing that he first started having problems with fatigue in March 2010, and that he needed to rest after 15-30 minutes of activity. (Tr. 297, 515). The ALJ noted that Plaintiff complained of fatigue during doctor's visits in March 2010, September 2010, and December 2010. (Tr. 297-98, 157, 166-68, 162-64). He noted that in April of 2011, Plaintiff complained of decreased energy, motivation, fatigue and concentration, but Provigil was helping with his fatigue. (Tr. 298, 195-96, 200-01). The ALJ stated that there was no indication that the claimant had required emergency treatment or inpatient hospitalization or documentation of significant exacerbations of symptoms during the relevant period. As such, the ALJ concluded that Plaintiff's conservative course of treatment was

inconsistent with a level of severity that would preclude him from sustaining any work activity. (Tr. 298).

The ALJ also stated that there was evidence that Plaintiff was not entirely compliant with his medication, which suggested that the symptoms may not have been as limiting as the claimant alleged, and noted that, pursuant to 20 C.F.R. § 416.930, if a claimant does not follow his prescribed treatment without a good reason, the Administration may find the claimant not disabled. (Tr. 298). However, the record contains the reasons why Plaintiff admitted to missing two out of seven Copaxone shots per week for a period of time. Plaintiff stated that the daily Copaxone shots caused a follicular site reaction and discomfort in the abdominal area, and that he actually felt better the day after missing a shot than he did when he did not miss a shot.[4] He tried switching to another drug, Betaseron, which was only prescribed for every other day, but he was not able to tolerate it as it caused increased fatigue and myalgias. As a result, he asked to restart the Copaxone in December of 2010, and was noted to be compliant with the medication as of his April 2011 appointment. (Tr. 162, 195). The ALJ did not discuss these reasons in his opinion.

The ALJ also listed Plaintiff's activities during the relevant period as "doing laundry, vacuuming, washing dishes, mowing the grass, performing light yard work, performing household repairs, shopping, attending church, and visiting with family." (Tr. 298, 114-15, 132-33, 170 ). The ALJ stated that these activities were not limited to the extent one would expect given Plaintiff's complaints. (Tr. 298). However, the ALJ neglected to note Plaintiff's qualifying statements with respect to these activities. In March of 2011, he stated that he "performed various house and yard

---

[4] Plaintiff also stated that he had trouble remembering whether he had taken his medication each day and his wife had to help him with remembering. (Tr. 115, 133).

work to the extent of my ability. Become very tired very fast" (Tr. 132). In February of 2011, Plaintiff stated that "he tries to occupy himself with simple brief household activities, but he is unable to complete these for very long due to fatigue." He stated that he "can no longer cut grass," "occasionally will do simple chores such as washing dishes or washing clothes," and "does attend church on occasion but denies other significant socialization." (Tr. 170). "[W]hile the ALJ does not have to discuss every piece of evidence, the ALJ cannot cherry-pick the evidence that supports his decision to the exclusion of evidence favorable to the claimant." Dowell v. Colvin, No. 1:12-cv-1006, 2015 WL 1524767, *4 (M.D.N.C. Apr. 2, 2015). The ALJ is obligated to consider all evidence, not just that which is helpful to his decision. Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir.1984) and Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir.1987)).

The ALJ accepted the opinion of neurologist Dr. Richard Polin, obtained by the Appeals Council, who found that during the relevant time period there was insufficient documentation of fatigue to meet Listing 11.09A or C. (Tr. 299, 428). He then opined, without further discussion, that Plaintiff was capable of performing light work with occasional stooping, bending, and crawling with no climbing or work at heights during the relevant period. (Tr. 428). There is no treating physician opinion to the contrary. However, "because nonexamining sources have no examining or treating relationship with [the claimant], the weight [the Commissioner] will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. § 404.1527(C)(3). Dr. Polin provided no explanation for his opinion, which mainly addresses Plaintiff's physical limitations rather than any limitations that may be caused by fatigue such as pace or the need for and/or length of breaks, for example.

In sum, based upon a review of the records, the undersigned cannot conclude that the ALJ's

consideration of Plaintiff's fatigue was sufficient such that the RFC established by the ALJ was based upon substantial evidence. Therefore, remand is necessary as to this issue of Plaintiff's fatigue to conduct the proper analysis and set forth reasoning in sufficient detail to allow this court to conduct an appropriate review.

### III. CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), it is recommended that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be REMANDED to the Commissioner for further administrative action with respect to Plaintiff's complaints of chronic fatigue as discussed above.

 s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

December 12, 2016  
Florence, South Carolina